138 N.J. Super. 52 (1975)
350 A.2d 246
KIRIL DIMITROV, INDIVIDUALLY, AND DIMITROV REAL ESTATE CORPORATION, A NEW JERSEY CORPORATION, PLAINTIFFS-RESPONDENTS,
v.
PETER H. CARLSON, JOHN P. HOGAN, DANIEL F. GRIFFIN, RAYMOND F. SHEA, PAUL A. HOWE, JOSEPH ANTENUCCI, FRANK LEE, "JOHN" MARKUSUN, (SAID FIRST NAME BEING UNKNOWN AND FICTITIOUS), CHAIRMAN AND MEMBERS OF THE PLANNING BOARD OF THE TOWNSHIP OF JACKSON, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted June 10, 1975.
Decided December 22, 1975.
*54 Before Judges HALPERN, CRAHAY and ACKERMAN.
Mr. Charles F. Holder, Jr., attorney for appellants.
Messrs. Silverman & Silverman, attorneys for respondents (Mr. Ruben D. Silverman, of counsel and on the brief).
PER CURIAM.
The planning board of Jackson Township appeals from the decision of the trial judge in a prerogative writ action instituted by respondents which reversed the action of the board in denying site plan approval.
The pertinent facts are as follows. In 1964 a use variance pursuant to N.J.S.A. 40:55-39(d) was granted to respondents to build 196 garden apartment units on the site in question. The variance itself provided no time limitation for exercise, nor was there any ordinance so providing. The variance imposed a number of conditions, including the requirement that the units be hooked up to sewerage facilities and not use septic tanks or cesspools. At the time garden apartments were a permitted use in certain zones of Jackson Township. In 1966 the zoning ordinance was amended so that thereafter garden apartments were not permitted in any zone. In 1967 an ordinance requiring site plan approval by the planning board was enacted which, among other things, provided that site plans shall be "in accord with the *55 standards of the zoning ordinance." For a number of reasons, including lack of bank financing for the project and lack of sewerage facilities, construction had not been commenced prior to 1970. At that time the respondents first submitted application for site plan approval under the 1967 ordinance. On March 28, 1973 the planning board by formal resolution denied site plan approval on the ground that the proposed use for garden apartments was not in conformity with the township zoning regulations. The position taken by the planning board was that the variance was, in effect, withdrawn by the passage of the 1966 zoning amendment and by abandonment because of the long delay in construction.
The trial judge held that the variance was still valid and that site plan approval was not properly denied on the ground stated by the planning board. As we understand his opinion, he did so on two grounds: (1) that the variance gave respondents a vested right which could not be rescinded and could not be affected by later amending the zoning ordinance to bar the use for which the variance was originally granted, and (2) respondents had spent sufficient money and the parties had taken such action that the planning board was estopped to deny approval of the site plan because of the change in the zoning ordinance.
We do not agree with the trial judge's apparent holding that the variance vested in respondents a right which could be exercised at any time in the future and could not be affected in any way by a later zoning change adopted before the use for which the variance was granted was fully exercised. For this reason and because matters of public interest of some novelty are involved, we have spelled out the grounds for our disagreement with the trial judge.
At the outset we note the Township of Jackson is not a formal party to this litigation and normally we would remand for compliance with the rule that administrative remedies must be exhausted before resort is had to the courts. The respondents had a right of appeal to the governing *56 body of the township. N.J.S.A. 40:55-1.19; Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291 (1968). Here, however, it appears that the respondents applied for a hearing before the township committee, which was denied on the ground that the committee "did not have jurisdiction." Moreover, the participation of the township committee and its attorney in the events prior to the denial of site approval by the planning board was such that we are satisfied that an appeal to the township committee would have been futile and illusory. In all the circumstances, we are satisfied that the interests of justice require that the normal rule of exhaustion of remedies not be applied here. See Kotlarich v. Ramsey Mayor and Council, 51 N.J. Super. 520, 539-540 (App. Div. 1958).
It is undeniable that the general rule applicable in this State, consistent with that in other neighboring jurisdictions, is that a use variance does not expire and is not lost simply by reason of the passage of time and non-exercise, absent an express time limitation set forth in the variance itself or in the zoning ordinance. Fort Lee Bd. of Ed. v. Fort Lee Mayor, etc., 31 N.J. Super. 22, 29 (App. Div. 1954); Ramsey Associates, Inc. v. Bernardsville Bd. of Adjust., 119 N.J. Super. 131 (App. Div. 1972); cf. North Plainfield v. Perone, 54 N.J. Super. 1, 12-13 (App. Div. 1959), certif. den. 29 N.J. 507 (1959); see Grimley v. Ridgewood, 45 N.J. Super. 574, 580 (App. Div. 1957), certif. den. 25 N.J. 102 (1957). The general rationale for such rule is that set forth in 2 Rathkopf, The Law of Zoning and Planning, 46-1 to 4 (1956), which points out that when a variance is granted the use permitted thereby becomes a conforming use and is in the nature of a vested right. The author states:
A use variance when granted is permanent under the law and conveys use rights which enure to the benefit of the property involved. When a variance or special exception is granted the use permitted thereby becomes a conforming use and such use is not lost through non-exercise, in the absence of a time limitation set forth in the variance itself or in the zoning ordinance. [at 46-1, 2] *57 With respect to the absence of an imposed time limitation, this court dealt with the matter in Fort Lee Bd. of Ed. v. Fort Lee Mayor, etc., supra. There, after referring to the provision in N.J.S.A. 40:55-39(d) that once a use variance is approved the administrative officer in charge of granting permits shall "forthwith issue a permit for such structure or use," we ruled:
Under this language it would appear that application for and issuance of the building permit should be expeditiously undertaken; that it is doubtful whether a delay of several years in the application for and issuance of the permit was intended. However, we find no legislative or judicial expression limiting the time within which a building permit may be issued following the grant of a variance and we deem that matter is one to be settled by the Legislature rather than the Judiciary. [31 N.J. Super. at 29]
In Ramsey Assoc. v. Bernardsville Bd. of Adjust., supra, we upheld the validity of an ordinance imposing a time limitation within which construction authorized by a variance must commence. In so doing we carefully reaffirmed the ruling in the Fort Lee case, saying:
Board of Education, Fort Lee v. Mayor, etc., Fort Lee, 31 N.J. Super. 22, 29 (App. Div. 1954), on which plaintiff relies, is not to the contrary. In Fort Lee, supra, the ordinance did not contain a limitation of time "within which a building permit may be issued following the grant of a variance." The decision in that case was but an application of the rule stated in 2 Rathkopf, Zoning and Planning (3 ed. 1966), c. 46 at 46-1 et seq:
When a variance or special exception is granted the use permitted thereby becomes a conforming use and such use is not lost through non-exercise, in the absence of a time limitation set forth in the variance itself or in the zoning ordinance. [119 N.J. Super. at 133; emphasis added]
In Industrial Lessors, Inc. v. Garfield, 119 N.J. Super. 181 (App. Div. 1972), certif. den. 61 N.J. 160 (1972), we held that a use pursuant to a variance granted under our statutory scheme is far different from a nonconforming use and that, although an ordinance could properly provide that a building permit should not issue to rebuild a nonconforming *58 building destroyed by fire, such ordinance could not similarly forbid rebuilding a building which was a permitted use by virtue of variance. We said:
A variance, however, is an official quasi-legislative, quasi-judicial determination that the use or structure allowed is not offensive to the ordinance in the broad context of the particular circumstances which, under the statutory criteria specified by N.J.S.A. 40:55-39, have authorized the grant. In essence, the use or structure allowed becomes a conforming use. 2 Rathkopf, The Law of Planning and Zoning (3d ed 1972), 46-1. Although a variance can perhaps be lost by abandonment, see North Plainfield v. Perone, 54 N.J. Super. 1, 12-13 (App. Div. 1959) certif. den. 29 N.J. 507 (1959) it otherwise partakes to a large degree of the characteristics of a vested right running with the land. 2 Rathkopf, op. cit.
Since the foregoing characteristics of a variance structure or use flow from the intention implicit in the statutory scheme any impairment thereof by municipal ordinance is invalid as conflicting with the statute. [119 N.J. Super. at 183]
See also, Walle v. So. Brunswick Tp. Bd. of Adj., 124 N.J. Super. 244 (App. Div. 1973).
It is also well settled that normally a governing body may not reopen a variance, once granted, and rescind the same. See Morton v. Clark Tp. Mayor & Council, 102 N.J. Super. 84 (Law Div. 1968), aff'd 108 N.J. Super. 74 (App. Div. 1969).
These general principles, however, do not answer the problem in this case and we disagree with the conclusion of the trial judge that they do. We do not think that the holder of a variance, who has not yet fully exercised it, is completely immune from a subsequent, valid ordinance which, as a matter of general zoning, prohibits in the future the use for which the variance was granted. We have found no case directly in point. But we are satisfied that the holder of a variance is in no better or different position than other conforming owners in his zone. If such owner of property has devoted his property to a permitted use, his right to continue such use cannot be denied by the subsequent adoption of a zoning ordinance which provides that such use is no longer permitted. On the other hand, if an *59 owner has never devoted his property to a permitted use and a subsequent ordinance bans such use in the future, he has no right thereafter to utilize his property for the prohibited use. However, if he takes steps to devote his property to a conforming use but he has not yet completed such steps and fully exercised his right to such use, the effect of a subsequent amending ordinance depends on the extent to which he has gone in his efforts to carry such use into fruition. He may or may not be barred.
The usual case in which the problem arises is where an owner takes out a building permit to devote his property to a conforming use and a subsequent ordinance is adopted which renders such use no longer permitted. The rule established by many cases in this jurisdiction is that
* * * the municipality nevertheless has a right to adopt later zoning or other police power legislation restrictive of the enjoyment of the permit already issued, but not where the permittee in reliance upon the permit has made substantial investment or expenditure, or where the extent of his reliance and the nature of the behavior of the parties show a balance of the equities strongly in favor of the permittee as against the general public represented by the municipal authorities * * *." [Sautto v. Edenboro Apartments, Inc., 69 N.J. Super. 420, 429-430 (App. Div. 1961)]
See also, Tremarco Corp. v. Garzio, 32 N.J. 448 (1960); Morris v. Postma, 41 N.J. 354 (1964); Roselle v. Moonachie, 49 N.J. Super. 35 (App. Div. 1958), reaffirming 48 N.J. Super. 17 (App. Div. 1957); Sautto v. Edenboro Apartments, Inc., 84 N.J. Super. 461 (App. Div. 1964), certif. den. 43 N.J. 353 (1964); Sandler v. Springfield Tp. Bd. of Adj., 113 N.J. Super. 333 (App. Div. 1971); Camparo v. Woodbridge Tp., 91 N.J. Super. 585 (App. Div. 1966), certif den. 48 N.J. 137 (1966); Annotation, "Retroactive effect of zoning regulation, in absence of saving clause, on pending application for building permit," 50 A.L.R.3d 596 (1973). As stated by the Supreme Court in the Tremarco case:
*60 There is no easy formula to resolve issues of this kind. The ultimate objective is fairness to both the public and the individual property owner. We think there is no profit in attempting to fix some precise concept of the nature and quantum of reliance which will suffice. Rather a balance must be struck between the interests of the permittee and the right and duty of the municipality through planning and the implementation of that scheme through zoning "to 'make, ordain and establish all manner of wholesome and of reasonable laws, not repugnant to the Constitution,' as may be deemed to be `for the good and welfare of the commonwealth, and all the subjects of the same.'" [32 N.J. at 457]
This is the rule which we think applies to the respondents here, just as it would to any other conforming owner.
It was stipulated at the trial, and is conceded before us, that the 1966 ordinance barring garden apartments was properly passed and was a valid exercise of municipal power. The trial judge applied the rule of the Sautto, Tremarco Corporation, and other cases cited above, and concluded that respondents were entitled to the planning board approval sought. By so doing he erred.
Equitable principles compel an affirmance of the action of the planning board. As previously indicated, on January 20, 1964 respondents were granted a use variance to erect 196 garden apartment units in a residence zone at an estimated cost of $3,000,000. On May 18, 1966 the zoning ordinance was amended barring garden apartments within the township. In 1967 an ordinance was adopted requiring site plan approval by the planning board for all buildings in the township. The record indicates respondents made no serious attempt to proceed with their 1964 use variance. They have never formally made written application for a building permit. It was not until February 10, 1970 that they applied for site plan approval. Again, for no satisfactorily explained reason, the application was not heard until March 23, 1973, when it was denied simply because the erection of garden apartments was a prohibited use. In summary, respondents waited six years after obtaining their use variance, and four years after the erection of garden apartments was proscribed, before seeking site plan approval.
*61 Such long delays, whatever financial or other problems respondents may have had, do not warrant equitable relief. In our view Sautto and its progeny are inapplicable. Nor does respondents' correspondence and contacts with the Township's engineer and building inspector warrant a determination that the Township or its planning board is estopped from denying relief to respondents. The fact that they spent about $7,000 on a $3,000,000 project, and obligated themselves to the extent of $20,000 with a Mr. Davis who was their joint venturer, does not impress us as being sufficient substantial reliance on the use variance to utilize the doctrine of equitable estoppel to frustrate the Township's zoning ordinance at this late date. If the ordinance barring garden apartments is valid, and we must assume it is, the granting of relief to respondents would have a devastating effect on the planned growth of the township. Respondents, without good cause, slept upon their rights and should not now be heard to complain. The effect of respondents prevailing on this appeal would be to limit and frustrate the township's right, power and duty, in factual situations as exist here, to adopt future zoning laws for the public welfare and safety under N.J.S.A. 40:55-30, et seq. See Ardolino v. Florham Park Bd. of Adj., 24 N.J. 94, 103-104 (1957). The equities here preponderate in favor of the township. See Roselle v. Moonachie, 49 N.J. Super. 35, 39-41 (App. Div. 1958).
The judgment below is reversed and the action of the planning board in denying site plan approval is affirmed.