193 N.J. Super. 554 (1984)
475 A.2d 94
EDWARD FARRELL & ANNE MARIE FARRELL, PLAINTIFF,
v.
ZONING BD. OF ADJ. OF ESTELL MANOR, ET AL., DEFENDANT.
Superior Court of New Jersey, Law Division Atlantic County.
Decided January 10, 1984.
*556 Steven D. Scherzer for plaintiff (Valore, McAllister, Westmoreland, Gould, Vesper & Schwartz, attorneys).
Richard A. Russell for defendant Estell Manor (Loveland, Garret & Russell, attorneys).
Edward Gatier for defendant Board of Adjustment of Estell Manor.
Edward J. Boccher for intervenor (Irwin I. Kimmelman, Attorney General of New Jersey, attorney).
WEINSTEIN, J.S.C.
This matter comes before the court by way of complaint in lieu of prerogative writ to review the actions of the Estell Manor Board of Adjustment in determining that a prior use variance had been abandoned and in thereafter denying the plaintiff's application for a new use variance.
The role of the court in such a case is strictly circumscribed. The court may not substitute its independent judgment for that of the board of adjustment. Confidence is reposed in the local officials who are more conversant with local conditions and interests. Their actions are not to be set aside unless shown to be arbitrary, capricious or unreasonable. A clear abuse of *557 discretion by the board of adjustment must exist before the court will overturn. Kramer v. Seagirt Bd. of Adj., 45 N.J. 268 (1965).
In reviewing the record below I find the underlying facts to be essentially undisputed. Plaintiffs are the owners of a 42-acre parcel of land in Estell Manor on which is situated a large georgian style mansion generally known as Manor Woods School. The property is zoned "highway commercial R-1." In 1972 plaintiffs' predecessor in title, Exceptional Children, Inc., sought and obtained a special use variance which allowed it to use the premises as an "administrative and business office for the intake and evaluation of children." The zoning board of adjustment conditioned its approval by limiting to twelve the number of "children located on the premises for evaluation." The premises was thereafter predominantly used for the ensuing seven years as a residential evaluation and treatment center. For all or a major portion of this time plaintiff operated the facility under contract with the New Jersey Department of Human Services, Division of Youth and Family Service.
In November 1979 when the last class "was graduated" the New Jersey Department of Human Services had not renewed its contract with plaintiffs. Plaintiffs listed the property for sale with at least one broker, generally disseminated information with respect to the availability of the property and entered into negotiations with the New Jersey Department of Corrections, intervenor herein, to lease or sell the premises to it. After approximately 15 months of negotiations plaintiffs did in fact lease the premises to intervenor for use as a residential treatment facility for teenage boys. During the negotiation period the facility was used only sparingly by a former staff member for psychological evaluations and outpatient treatment. The court is satisfied from the evidence that the mayor of Estelle Manor at the very least had been apprised of the plans intervenor had for the use of the property. A building permit was obtained and certain improvements were undertaken and completed to ready the premises for intervenors' use.
*558 At about this time the zoning enforcement officer of Estelle Manor notified plaintiff that the use did not conform to the zoning ordinance and that the prior use variance had been abandoned. It should be noted that a neighbor was, at this time, the source of repeated complaints respecting the operation by intervenor and the conduct of the residents. Plaintiff brought this matter before the zoning board for an "interpretive hearing" pursuant to N.J.S.A. 40:55d-70 b with respect to the issue of abandonment.
A plenary hearing was held and the board of adjustment determined as a matter of fact that the use variance had been abandoned. It concluded that plaintiffs' failure to use the property as a school consistent with the previously granted use variance for a period in excess of a year coupled with plaintiffs' efforts to market the property during that time constituted an abandonment of the variance previously granted. In so concluding, the board erred.
Absent an expressed provision in the zoning ordinance or a time limitation established in the variance itself, a use variance does not expire and is not lost merely because the property is vacant, placed on the market for sale or used in a more restrictive fashion. A variance granted is not personal to the owner to whom granted but is available to the grantees' successors. Unless limited by its terms, a use variance is permanent under the law and is not lost through nonexercise. Dimitrov v. Carlson, 138 N.J. Super. 52 (App.Div. 1975); Fort Lee Bd. of Ed. v. Mayor, etc. of Fort Lee, 31 N.J. Super. 22 (App.Div. 1954), which cited with approval the following rule stated in 2 Rathkopf, Zoning & Planning (3 ed. 1966) § 46-1 et seq.:
When a variance or special exception is granted the use permitted thereby becomes a conforming use and such use is not lost through nonexercise, in the absence of a time limitation set forth in the variance itself or in the zoning ordinance.
See Rathkopf, Zoning & Planning (4 ed. 1976) § 38.06.
Having concluded that defendant erred as a matter of law on the abandonment issue it is not necessary to comment *559 upon plaintiffs' assertion that a finding of abandonment was unsupported by the record. In passing, however, we note that the evidence was far from convincing. Defendant reached its conclusion, at best, on flimsy evidence. Even though we have held the 1972 variance to be subsisting it is necessary to consider the present use of the premises within the context of that variance. Defendants assert that even if the 1972 variance is still in effect plaintiffs and intervenor are not operating in consonance with it. It is not disputed that the present operation violates the condition imposed limiting the student population to 12. Generally speaking, defendants have the right, if not the duty, to make certain that the conditions, fairly and appropriately imposed are maintained inviolate. Neither plaintiffs nor intervenor take issue with that principle. They assert, however, that intervenor is entitled to a qualified immunity from the strict terms of the zoning ordinance and should, therefore, be permitted to operate a residential treatment and evaluation center at the subject premises even if the resident population exceeds 12. I agree.
Recognizing the statutory responsibility of the New Jersey Department of Corrections to provide facilities such as were intended at Manor Woods, N.J.S.A. 30:1B-1, and the substantial public interest in providing care and treatment for disturbed and delinquent youths, the conflicting local interest must give way, where, as here, there is an absence of evidence indicating an appreciable adverse impact on an important legitimate local interest. Defendant considered the premises appropriate for an evaluation center and school in 1972. The major change in the use is merely in the number of residents. The record fails to demonstrate a substantial negative impact upon the community that would outweigh the public good to be achieved. Rutgers v. Piluso, 60 N.J. 142, 143 (1972); Pemberton Twp. v. State, 178 N.J. Super. 346 (App.Div. 1981), certif. den. 87 N.J. 364 (1981). This is one of those instances where the inconvenience *560 and disturbance to one neighbor must not be permitted to thwart the needs of the State. Defendants argue that assuming all of the above to be true the State's qualified immunity does not inure to the benefit of the plaintiffs and cannot be relied upon by the State which is the lessee and not the owner. Recognizing the limitation expressed in Carroll v. Jersey City Bd. of Adj., 15 N.J. Super. 363 (App.Div. 1951), I, nonetheless, find the immunity existent. The public importance of a state office building as in Carroll cannot be reasonably compared to a juvenile rehabilitation center. I cannot conceive that the Appellate Division intended to extend the Carroll principle to such circumstances or would do so today, recognizing the realities of current state operations. Moreover, in the light of Thanet Corp. v. Princeton Bd. of Adj., 108 N.J. Super. 65 (App.Div. 1969), certif. den. 55 N.J. 360 (1970), it is extremely doubtful that Carroll survives today as a viable authority.
In reversing the action of defendant board of adjustment this court emphasizes that if the State of New Jersey terminates its lease, the use of the premises by plaintiffs must be in strict compliance with the terms of the 1972 variance.
Judgement is herewith entered in favor of plaintiffs and intervenor. Plaintiffs' counsel is directed to submit the appropriate order.