S02A0698. MEEKS et al. v. CITY OF BUFORD et al.
(571 SE2d 369)

HUNSTEIN, Justice.

Appellants, trustees of a medical pension plan, appeal from the trial court's order denying and dismissing their petition for declaratory and mandamus relief in a case in which appellants assert they have a vested property right to utilize investment property in accordance with a zoning variance granted in 1985. Because appellants failed to establish that they acquired a vested property right, we affirm.

In July 1985, the City of Buford enacted a zoning ordinance wherein the zoning classification for the 30 acres of undeveloped land

at issue here was changed from RM-13 (residential multi-family with a density of 13 units per acre) to RM-8 (residential multi-family with a density of 8 units per acre). At the time, the property was under contract for sale with a prior potential purchaser. On November 18, 1985 the City's Zoning Board of Appeals approved a variance regarding the property which allowed a density of 11-12 units per acre without time limitations or conditions precedent. The City thereafter forwarded a letter to the Gwinnett County Planning and Zoning Department regarding the variance and requesting a building permit be granted to the then-potential purchaser of the property. However, the potential purchaser never bought the property and the building permit never issued. On December 30, 1986 appellants purchased the property contingent upon unconditional zoning for multi-family use with 13 apartment units allowable per acre, acknowledgment by the City that it had no future plans to rezone the property, and guaranteed issuance of development and building permits for the property. Appellants relied on the existing variance and approved development plan as satisfaction of these contingencies. Appellants expended approximately $500,000 in purchasing the property and have paid property taxes and interest on the promissory notes since 1986.

In 1991, the City adopted a new comprehensive zoning ordinance wherein the square footage requirements for an RM-8 zoning changed. In November of 1999, appellants entered into a conditional sales contract with a potential purchaser. The potential purchaser's application for a variance to change the zoning density from 8 to 10 multi-family housing units per acre was denied by the City because the 1991 zoning ordinance provided for an RM-8 density, the 1985 variance was no longer applicable, and the higher density was otherwise inappropriate for the property.[1] In August 2000, appellants sought a declaratory judgment and writ of mandamus from the Gwinnett County Superior Court seeking to enforce the 1985 variance and to require the City to issue a certificate of zoning compliance confirming the development terms allowed by the variance. The trial court denied appellants' request for relief.

1. The dispositive issue in this case is whether appellants obtained a vested right to use the undeveloped investment property in the manner permitted by the 1985 variance. Appellants argue that they obtained a vested right in the land use classification granted by the 1985 variance and that under *Pinnell v. Kight*, 245 Ga. App. 299 (2) (537 SE2d 170) (2000), the mere passage of time cannot invalidate the vested right to utilize the property in the manner permitted by

---

[1] No appeal of the denial of the variance was filed.

the variance. The majority rule for vesting a landowner with a right to use the property consistent with a pre-existing land use notwithstanding subsequent zoning and land use changes is set forth in *Barker v. County of Forsyth*, 248 Ga. 73 (2) (281 SE2d 549) (1981). The rule requires that in order for a landowner to acquire a vested right to initiate a use, despite a restriction contained in an ordinance, the landowner must in good faith have " 'made a substantial change of position in relation to the land, made substantial expenditures, or [have] incurred substantial obligations.' [Cits.]" Id. at 76. *Corey Outdoor Adv. v. Bd. of Zoning &c.*, 254 Ga. 221, 225 (4) (327 SE2d 178) (1985); see 4 Rathkopf, The Law of Zoning and Planning, § 70:20 (2001). While we have acknowledged the existence of "constitutionally protected vested zoning rights" of a property owner under certain conditions, so as to preclude retroactive application of a zoning ordinance, id., the mere reliance on a particular variance without a showing of a substantial change in position by expenditures based upon an existing zoning ordinance does not vest rights in the landowner. This view is consistent with decisions of this Court regarding the vesting of property rights in property as zoned. See *Cohn Communities v. Clayton County*, 257 Ga. 357 (1) (359 SE2d 887) (1987); *WMM Properties v. Cobb County*, 255 Ga. 436 (1) (339 SE2d 252) (1986); and *Barker*, supra, 248 Ga. at 75 (2). Although these cases do not specifically address the rights of a holder of a variance who has not yet exercised it, we see no reason why the holder of an unexercised variance should be in a better or different position with regard to the vesting of property rights than one whose rights emanate from a building or special use permit or approved development plan. See id.; *Schulman v. Fulton County*, 249 Ga. 852, 853 (295 SE2d 102) (1982); *Barker*, supra; see generally *Dimitrov v. Carlson*, 350 A2d 246, 248-251 (N.J. Super. App. Div. 1975).

2. In the instant case, appellants sought a declaratory judgment and the issuance of a mandamus requiring the City to guarantee that the density variance issued over 15 years ago was still in effect. The record demonstrates, however, that since they purchased the property in 1986, appellants have made no significant expenditures in reliance on the variance or official assurances that a building permit would issue. See *Cannon v. Clayton County*, 255 Ga. 63 (335 SE2d 294) (1985) (property owner acquired vested rights based on substantial expenditures, in addition to purchase price, in reliance on zoning); *North Ga. Mountain Crisis Network v. City of Blue Ridge*, 248 Ga. App. 450 (2) (546 SE2d 850) (2001) (purchase of land by itself does not confer vested right to particular zoning use); see generally Anderson's American Law of Zoning (4th ed.), § 6.21. Accordingly, appellants failed to establish that they acquired a vested right to use the property in accordance with the 1985 variance and the trial court

did not err in refusing to give effect to the variance.

*Judgment affirmed. All the Justices concur, except Carley, J., who dissents.*

CARLEY, Justice, dissenting.

In 1985, the subject property was rezoned from RM-13 to RM-8, a residential multi-family classification with a density of eight units per acre and a minimum square footage of 1050 per unit. Shortly thereafter, the City approved an unconditional variance for a greater density of 11-12 smaller units per acre, each having a square footage of no more than 1050. However, the property was not developed at that time and eventually was conveyed to Appellants. The issue in this appeal is whether the variance is still viable despite the previous failure to exercise it. Because I believe that the variance remains valid and enforceable against the City, I respectfully dissent to the Court's ruling to the contrary.

The purpose of a variance is to allow the owner to make a reasonable use of his or her property, and a subsequent failure to put the land to that use does not have an adverse effect on the validity of the variance so long as the circumstances which supported the original issuance of the variance remain the same. *Pinnell v. Kight*, 245 Ga. App. 299, 302 (2) (537 SE2d 170) (2000); 3 Rathkopf, The Law of Zoning and Planning, § 58:24, p. 58-163. "Simply, a variance conveys rights which inure to the benefit of the property involved. When a variance is granted, the use permitted becomes a conforming use." 3 Rathkopf, supra at § 58:23, pp. 58-152 to 58-155. Since a variance is not personal to the owner, it is available to any subsequent purchaser if it has not expired according to its terms or has not been effectively revoked by the zoning authority. 3 Rathkopf, supra at § 58:23, p. 58-149. An unconditional variance is "permanent under the law and is not lost through nonexercise. [Cits.]" *Farrell v. Zoning Bd. of Adj. of Estell Manor*, 475 A2d 94, 96 (N.J. Super. 1984). The variance in this case does not provide a time limit on its exercise. Therefore, Appellants are entitled to enforce the inchoate right conferred by the variance unless and until it has been properly revoked by the City. See *Pinnell v. Kight*, supra at 302 (2).

The City did not attempt to revoke the variance expressly. Compare *Pinnell v. Kight*, supra. However, the trial court found that the variance was implicitly extinguished by subsequent revisions of the City's zoning ordinance. It is true that an unexercised variance can be revoked by a subsequent rezoning of the property to an entirely different classification which is inconsistent with the previously authorized nonconforming use. "[I]f an owner has never devoted his property to a permitted use and a subsequent ordinance *bans such use* in the future, he has no right thereafter to utilize his property for

*the prohibited use.*" (Emphasis supplied.) *Dimitrov v. Carlson*, 350 A2d 246, 250 (N.J. Super. 1975).

The practical effect of a variance is to establish uses pursuant to the variance as conforming uses. However, such a conforming use may become nonconforming when a comprehensive ordinance is subsequently enacted that *reasserts the nonpermitted nature of that use and imposes additional limitations on its extension.* (Emphasis supplied.)

*Sawyer Environmental Recovery Facilities v. Town of Hampden*, 760 A2d 257, 263 (II) (Me. 2000). Subsequent rezoning of this type is so inconsistent with the unexercised variance as to clearly indicate the zoning authority's determination of a change in the original circumstances or in the neighborhood conditions such that a belated exercise of the variance would affect its basic character. See *Pinnell v. Kight*, supra at 302 (2).

In this case, however, the City has not implicitly signified such a significant change in circumstances or conditions, because it has not rezoned the property to a classification which is inconsistent with the variance granted in 1985. Indeed, the tract has at all times retained its classification as RM-8 and, thus, the only permitted use was, and is, multi-family residential. The variance did not authorize a deviation from that use, but was simply a "non-use" or "area" variance related to the number and size of residential units authorized on each acre. See 3 Rathkopf, supra at § 58:4, p. 58-12. Thus, exercising the variance when issued would not have changed the multi-family residential character of the neighborhood, and neither would allowing such use today result in any such change.

The only zoning revision since 1985 relates to the square footage requirement for units in the RM-8 classification. The former 1050 square foot minimum now has been raised to 1400. However, that subsequent revision of the ordinance is not inconsistent with the original variance, since the very purpose of the variance was to grant an exemption from the applicable density and square footage requirements. In 1985, the zoning ordinance authorized eight units of a certain size, whereas today it permits precisely the same number of units, but of a somewhat larger size. The City formerly authorized a greater density of smaller-sized units despite the eight-unit and square footage limitations, and Appellants now seek to proceed in accordance with that exemption notwithstanding the density and square footage requirements established by the ordinance. So long as Appellants are limited to building units of the smaller size authorized by the variance granted in 1985, then allowing them to construct more than eight units per acre will not have any greater or

lesser impact on the neighborhood now than it would have had then. The relative densities remain exactly the same, and the units built by Appellants will still be smaller than those located on the neighboring property not subject to the variance. Raising the minimum square footage requirement is irrelevant to the continuing validity of a variance which purports to exempt the property from that requirement. If, in the years since the variance was originally granted, circumstances have not changed and the neighborhood remains zoned for multi-family residential use, the City should not be permitted to withdraw the right that it granted to construct 11 or 12 smaller units per acre, rather than the authorized eight. See *Pinnell v. Kight*, supra at 302 (2).

The majority correctly notes that

in order for a landowner to acquire *a vested right to initiate a use, despite a restriction contained in an ordinance*, the landowner must in good faith have " 'made a substantial change of position in relation to the land, made substantial expenditures, or (have) incurred substantial obligations.' [Cits.]" [Cits.] (Emphasis supplied.)

(Majority opinion, p. 587.) However, that principle does not apply here, since Appellants want to use the property for the very multi-family residential purpose that is presently permitted under the applicable zoning ordinance. Cf. *WMM Properties v. Cobb County*, 255 Ga. 436, 438 (1) (b) (339 SE2d 252) (1986) (vested right to pursue use permitted under existing zoning regulations). Compare *Cohn Communities v. Clayton County*, 257 Ga. 357 (359 SE2d 887) (1987) (vested right to non-permitted use); *Cannon v. Clayton County*, 255 Ga. 63, 64 (335 SE2d 294) (1985) (hypothetical discussion of vested right to non-permitted use); *Corey Outdoor Advertising v. Bd. of Zoning Adjustment*, 254 Ga. 221 (327 SE2d 178) (1985) (vested right to non-permitted use); *Schulman v. Fulton County*, 249 Ga. 852 (295 SE2d 102) (1982) (vested right to pursue a special use); *Barker v. County of Forsyth*, 248 Ga. 73 (281 SE2d 549) (1981) (vested right to non-permitted use); *North Ga. Mountain Crisis Network v. City of Blue Ridge*, 248 Ga. App. 450 (546 SE2d 850) (2001) (vested right to non-permitted use); *Dimitrov v. Carlson*, supra (vested right to non-permitted use). The dispositive question is whether they are entitled to do so in accordance with the "non-use" or "area" variance granted by the City in 1985. Whether Appellants have made substantial expenditures or incurred substantial obligations is immaterial to that inquiry. They have a vested right in the variance because it has not expired and it has not been revoked by the City. See *Pinnell v. Kight*, supra at 302 (2). Thus, I submit that the trial court erred in

failing to grant the requested declaratory and mandamus relief.

DECIDED OCTOBER 15, 2002.

*Webb, Tanner & Powell, Anthony O. L. Powell*, for appellants.
*Freeman, Mathis & Gary, Dana K. Maine, Chandler & Britt, Gregory D. Jay*, for appellees.