42933. WMM PROPERTIES, INC. v. COBB COUNTY et al.
(339 SE2d 252)

GREGORY, Justice.

WMM Properties, Inc. (WMM) brought suit against Cobb County officials challenging zoning stipulations placed on WMM's property. The trial court found the action of the officials to be proper. We disagree and reverse.

Wallace Montgomery, Jr., president of WMM, testified that he was approached several years ago by Cobb County Commission Chairman Ernest Barrett concerning 156 acres of land off Old Lost Mountain Road in Cobb County. Montgomery had previously told Barrett of his company's plans to find property in the county suitable for a mobile home-type development. According to Montgomery, Barrett, now deceased, encouraged WMM to buy the property. On May 6, 1982, before any purchase, Montgomery obtained a certification of zoning from the Cobb County Planning Commission. The document showed the property in question was zoned R-20, MHP and RM-8. The zoning designations were compatible with WMM's plans and would allow development of a mobile home park with eight units per acre. No reference was made in the certification to further stipulations or conditions on the property.

WMM purchased the property on February 28, 1983. Soon after, WMM submitted development plans to county officials for approval. The plans showed that the property would be developed in four phases and included a preliminary master site plan for the entire development. The plans also contained detailed site plans for Phase I of the development, which included water and drainage plans, storm and sewer profiles, street plans and an entrance detail for access to Old Lost Mountain Road. County officials approved the plans on July 14, 1983. The approval stamp on the Phase I plan indicated approval by the county planning, zoning, engineering and building inspection departments. Another notation stated the plans were approved subject to approval for sewerage being obtained and the addition of another entrance. A handwritten notation pointed out that a 25-foot buffer between the development and adjacent residential areas was planned,

as well as a recreation area. The master site plan drawing was also stamped with county approval.

WMM proceeded with development. However, the submission of the plans apparently alerted Cobb County officials to an oversight committed when the county approved its comprehensive zoning plan in 1972. Under zoning of the area prior to 1972, the property in question was zoned the same but subject to several stipulations on its use. The stipulations had not been carried over to the new comprehensive plan. Without notice to WMM, the Cobb County Commissioners at their regularly scheduled meeting on August 9, 1983 voted to reaffirm the stipulations. The stipulations would have eliminated access to Old Lost Mountain Road, increased the vegetation buffers from 25 to 200 feet and reduced the density of the development from eight to five units per acre. Meanwhile, the City of Powder Springs denied WMM access to its sewerage system.

WMM sued the county and Powder Springs. The trial court ruled the stipulations to be void because the county did not give WMM notice and an opportunity to be heard before imposing them. The trial court also ruled against Powder Springs. The county did not appeal the judgment. In January 1985, this court affirmed the trial court's ruling in favor of WMM on the sewerage question in *City of Powder Springs v. WMM Properties, Inc.*, 253 Ga. 753 (325 SE2d 155) (1985).

On August 9, 1984, the county notified WMM that a hearing would be held on September 11, 1984 to consider the restoration of the stipulations. Ironically, a second set of plans for the development which had been submitted to the county officials adding an entrance to Hunter Road on the south of the property was approved for construction by county officials on September 7, 1984, four days before the hearing. After the hearing, the commissioners again voted to attach the stipulations to the property. The new stipulations included the expansion of the buffer zone to 200 feet and the reduction of the density level from eight to five units per acre. The stipulations restricted access to the property to Florence Road only. Florence Road does not touch the property and the nearest point between is 1800 feet across a swamp.

Following the commission's decision, WMM filed a complaint in equity in the Cobb County Superior Court seeking an injunction against the county to block the imposition of the stipulations. WMM also sought damages claiming an unconstitutional taking of its property. The trial court found the county's actions to be proper and denied relief.

1. WMM claims the trial court erred by failing to declare the county's imposition of stipulations affecting its property to be a denial of a vested right to develop the property as zoned. In dealing

with this contention, the question then arises: when do the rights of a landowner to use its property for a given use become vested? Stated conversely, when does the power of a governing authority to rezone property cease to exist, so that the governing authority can no longer amend its zoning ordinance so as to affect a landowner's property? The question becomes particularly pertinent in the development of property such as WMM's which involves several planning and construction phases over a lengthy period of time. Over the last few decades, the following rules have evolved dealing with the time that property rights in property as zoned vest:

(a) *Right to Rely upon Building and other Permits Once Issued.* Once a building permit has issued, a landowner has a right to develop the property pursuant to that permit (during its term or for a reasonable time after its issuance if no term is specified), notwithstanding a zoning or regulatory change subsequent to the issuance of the building permit, and notwithstanding the fact that there has been no substantial expenditure of funds in reliance upon the building permit. *Clark v. Intl. Horizons, Inc.*, 243 Ga. 63 (252 SE2d 488) (1979); *Keenan v. Acker*, 226 Ga. 896 (178 SE2d 196) (1970). In *Craig v. City of Lilburn*, 226 Ga. 679 (177 SE2d 75) (1970), it was held that the issuance of septic tank permits plus expenditures in reliance thereon created a vested right to use the property as shown by the installation of the septic tanks notwithstanding a regulation enacted subsequent to the issuance of those permits. In *Schulman v. Fulton County*, 249 Ga. 852, 853 (295 SE2d 102) (1982), it was held that the issuance of a special use permit plus expenditures in reliance thereon, like a building permit, created a vested right in the use approved by the permit. On the other hand, in *Cobb County v. Peavy*, 248 Ga. 870, 872 (286 SE2d 732) (1982), it was held that issuance of a business license is not the equivalent of a building permit.

(b) *Right to Issuance of a Building Permit.* A landowner has a right, enforceable by mandamus, to be issued a building permit in accordance with zoning regulations as such regulations exist at the time a proper application for building permit is submitted to the proper authority. *City of Atlanta v. Westinghouse Electric Corp.*, 241 Ga. 560 (246 SE2d 678) (1978); *Gifford-Hill & Co. v. Harrison*, 229 Ga. 260 (191 SE2d 85) (1972); *Howard Simpson Realty Co. v. City of Marietta*, 220 Ga. 727 (141 SE2d 460) (1965); *City of Decatur v. Fountain*, 214 Ga. 225 (104 SE2d 117) (1958). Similarly, a purchaser who contracts to buy land conditioned upon its being rezoned has a right to be issued a certificate of zoning compliance (a prerequisite to the issuance of a building permit) in accordance with a zoning amendment obtained by the purchaser. *Clairmont Development Co. v. Morgan*, 222 Ga. 255 (149 SE2d 489) (1966).

(c) *Right to Rely upon Approved Development Plan.* (1) *For-*

*mally approved.* A landowner has a right to develop the property pursuant to a development plan duly approved by the county zoning authority pursuant to powers delegated to it by the county commission even though the development plan varied the existing zoning, where the landowner has expended large sums of money in furtherance of the development and has dedicated land for use as parks and schools in reliance upon its approved development plan. *DeKalb County v. Chapel Hill, Inc.*, 232 Ga. 238, 244 (205 SE2d 864) (1974). (2) *Informally approved.* A landowner has a right to develop property where the property was purchased in reliance upon the assurance of one county commissioner that the property was zoned for the use intended, the development plan was in accordance with the existing zoning and was approved, albeit informally, by the county commissioners, and the landowner has expended money in reliance upon the development plan and the existing zoning. *Spalding County v. East Enterprises, Inc.*, 232 Ga. 887 (209 SE2d 215) (1974).

(d) *Right to Rely upon Official Assurances that a Building Permit Will Probably Issue.* "Where a landowner makes a substantial change in position by expenditures in reliance upon the probability of the issuance of a building permit, based upon an existing zoning ordinance and the assurances of zoning officials, he acquires vested rights and is entitled to have the permit issued despite a change in the zoning ordinance which would otherwise preclude the issuance of a permit." *Barker v. County of Forsyth*, 248 Ga. 73, 76 (281 SE2d 549) (1981). Also, when a landowner makes expenditures, in addition to paying the purchase price, in reliance on the existing zoning and assurances by zoning officials that they would be able to get a permit for the use planned, county officials may not subsequently impose a moratorium on the issuance of all building permits for the use intended. *Cannon v. Clayton County*, 255 Ga. 63 (335 SE2d 294) (1985).

Applying the foregoing rules to the facts of this case, we find WMM has a vested right in the property as zoned free of the subsequent stipulations under at least two of the tests enunciated above.

First, WMM obtained approval for detailed development plans of all relevant county departments as early as July 14, 1983, and expended large sums of money to go ahead with the development from that point. A second set of plans, with minor alterations, was again approved on September 7, 1984. Such approval gives WMM the right to develop the property as zoned at the time of approval under the holding in *DeKalb County v. Chapel Hill, Inc.*, supra.

Secondly, WMM's right to develop vested because of its substantial expenditures plus official assurances that future permits would probably issue for the development. *Barker v. County of Forsyth* and *Cannon v. Clayton County*, supra. As noted, the Cobb County Com-

mission chairman, who was well aware of WMM's plans, solicited the company to purchase the property in the first place. Additionally, before ever purchasing the property, WMM obtained a certification of zoning from the Cobb County Planning Commission giving the existing zoning designations with no mention of stipulations or the likelihood that they attach.

2. The county contends the addition of the stipulations does not constitute a rezoning of WMM's property and therefore the rules set out in Division One do not apply. Rather, the county contends these are stipulations inherently authorized by the existing zoning classification. We do not agree. The stipulations affect substantial property rights of WMM by effectively denying access, limiting use of a 200-foot strip, and reducing density from eight to five units per acre. These property rights are protected under the aforesaid rules and may not be taken by stipulations or by rezoning. *Vining Assn., Inc. v. New Paces Ferry Rd. Dev. Co.*, 231 Ga. 804 (204 SE2d 122) (1974).

3. The trial court noted that WMM did not apply to the Cobb County Board of Commissioners to remove or modify the stipulations from the property before seeking relief in the Superior Court. The court said WMM's failure to reapply indicates it did not exhaust all available remedies first, and cited as authority *City of Rome v. Pilgrim*, 246 Ga. 281 (271 SE2d 189) (1980) and *Contris v. Richmond County*, 238 Ga. 731 ( 235 SE2d 19) (1977). However, those cases dealt with failure by parties seeking a variance to preexisting zoning to appeal to administrative bodies set up by county ordinances. Neither dealt with a decision by the highest zoning authority in the county to apply severe zoning stipulations to a landowner who had acquired a vested right in property as zoned. Here, WMM had just completed a hearing before the highest zoning body in Cobb County, the result of which was the application of the stipulations to WMM's property when it filed for injunctive relief. Requiring WMM to seek a review that ultimately would result in a decision on the same issue by the same body would require a useless act.

*Judgment reversed. Hill, C. J., Marshall, P. J., Smith, Weltner, Bell, JJ., and Judge E. Mullins Whisnant concur. Clarke, J., disqualified.*

DECIDED FEBRUARY 13, 1986.

*Dupree & Staples, Mark A. Johnson, Alston & Bird, G. Conley Ingram,* for appellant.

*Sams, Glover & Gentry, Garvis L. Sams, Jr.,* for appellees.