302 Ga. 381
FINAL COPY

S17A0788. EDWARDS et al. v. CITY OF WARNER ROBINS et al.

NAHMIAS, Justice.

This case presents challenges to a municipal zoning ordinance. Because the property owners have abandoned their claim that the ordinance was unconstitutionally enacted and have not shown that it is unconstitutionally vague as applied to them or that it unconstitutionally interferes with their property rights, we affirm the superior court's grant of summary judgment to the city.

1. In 1973, Charles Edwards acquired 794 Oak Avenue in the City of Warner Robins ("the City"). This property was subdivided into three lots, each with a mobile home that he and his wife, Carol Edwards, rent out; they also have sometimes lived in one of the homes. In June 1997, the Edwardses ("Appellants") bought properties adjoining 794 Oak Avenue: 790, 791, and 793 Oak Avenue, which together comprise seven acres with 36 lots. Each lot either had a mobile home on it or was being held out for use by a mobile home.

Appellants allege that they purchased these properties for use as a "manufactured home park." At the time of the 1997 purchase, however, mobile homes were prohibited on the properties by the restrictions of the City's Base Environs Overlay District ("BEOD") ordinance, except where permitted as a legal nonconforming use.

The City Council added the BEOD to the City's overall zoning ordinance on February 22, 1994, with the enactment of Ordinance 12-94. As explained in § 74.4 of the zoning ordinance, the BEOD is "an overlay district that applies additional standards and requirements to properties located within an underlying zoning district." Section 74.4.1 explains that:

> Proposed developments located within this zoning district shall comply with these requirements and the requirements of the underlying zoning district and any other overlay districts that apply to lands within this zone. In the case of conflicting standards and requirements, the more stringent standards and requirements shall apply.

That section also lists the purposes of the BEOD:

> To protect the public health, safety, and welfare by regulating development and land uses within noise-sensitive areas and accident potential zones;
> To ensure compatibility between and surrounding land uses and Robins Air Force Base; and
> To protect RAFB from encroachment by incompatible

2

development.

Table 74.4-A was adopted as part of the BEOD ordinance, and it prohibited "manufactured housing" or "mobile homes" in the district.[1]

Section 74.4.4.1 provides an exemption to the BEOD restrictions for existing uses:

> Uses existing on the effective date of these regulations shall not be required to change in order to comply with the requirements specified herein. The nonconforming use requirements of these regulations shall apply to the future applicability of the standards and requirements contained herein.

The nonconforming use rules are laid out in §§ 61.5 and 61.6 of the City's zoning ordinance. Section 61.5.1 says, "No such nonconforming uses shall be enlarged or increased, nor extended to occupy a greater area of land than was occupied at the effective date of adoption or amendment of these regulations." Section 61.5.4 says, "No additional structures not conforming to the requirements of these regulations shall be erected in connection with such nonconforming use of land." And § 61.6.2 says that if a nonconforming structure is "destroyed by any means to the extent of more than fifty (50) percent

_____

[1] The City's zoning ordinance uses "manufactured housing," "manufactured home," and "mobile home." The parties use the terms interchangeably with regard to the homes Appellants have on and want to add to their properties.

3

of its current replacement value, it shall not be reconstructed except in conformity with the provisions of these regulations[.]"[2]

It is undisputed that all of Appellants' Oak Avenue properties are within the BEOD. The three mobile homes on the 794 Oak Avenue lots have been permitted since 1994 as nonconforming uses. In July 1997, Appellants asked the City for rezoning of their other Oak Avenue lots, and the City Council granted this request and rezoned the properties from R-3 to R-MH.[3]

On June 18, 2008, the City allegedly published in The Telegraph

[2] The City's full zoning ordinance is not in the record. A certified copy of Section 74 of the ordinance, which includes the BEOD ordinance, is in the record. Appellants included an uncertified copy of the pertinent provisions of §§ 61.5 and 61.6 as an attachment to their complaint. The full zoning ordinance can be accessed online through the City's website, but this document does not appear to be certified as required for the trial court to take judicial notice of it under OCGA § 24-2-221. See id. ("When certified by a public officer, clerk, or keeper of county or municipal records in this state in a manner as specified for county records in Code Section 24-9-920 or in a manner as specified for municipal records in paragraph (1) or (2) of Code Section 24-9-902 and in the absence of contrary evidence, judicial notice may be taken of a certified copy of any ordinance or resolution included within a general codification required by paragraph (1) of subsection (b) of Code Section 36-80-19 as representing an ordinance or resolution duly approved by the governing authority and currently in force as presented. Any such certified copy shall be self-authenticating and shall be admissible as prima-facie proof of any such ordinance or resolution before any court or administrative body."); former OCGA § 24-7-22 (same). See also Whitfield v. City of Atlanta, 296 Ga. 641, 641 (769 SE2d 76) (2015) ("City and county ordinances must be alleged and proven in order to be considered by the superior and appellate courts of this State. The proper method of proving a city ordinance is production of the original ordinance or a certified copy thereof." (citations omitted) (decided under the new Evidence Code)).

[3] Uncertified zoning ordinance excerpts in the record show that R-3 property is limited to residential uses. The uncertified City zoning ordinance not in the record but accessible online says R-MH means "manufactured home residential district."

4

newspaper, the City's legal organ, notice of a July 8 hearing to be held by the City planning and zoning commission on a proposed amendment to the BEOD ordinance.[4] The minutes of the July 8 hearing show that the amendment to the BEOD ordinance was discussed, no one expressed opposition, and the commission voted to recommend passing the amendment. On July 21, the City Council adopted Ordinance 27-08, which amended the zoning ordinance by replacing Table 74.4-A with a new table. The new table says that "mobile home parks or courts" and "related structures" are prohibited.

On February 17, 2009, the City's director of development sent Appellants an e-mail explaining that even though the underlying R-MH zoning of Appellants' properties allows mobile homes, the BEOD takes precedence and does not allow them. On August 16, 2011, Appellants submitted a formal request to the City's building inspector asking to be allowed (1) to upgrade the

[4] The only evidence of this notice in the record on appeal is an affidavit that is ostensibly from the classified/legal supervisor of The Telegraph, but that is signed by a different person "on behalf of" her, making the affidavit invalid. See Sambor v. Kelley, 271 Ga. 133, 134 (518 SE2d 120) (1999). In its order granting summary judgment in favor of the City on the constitutional issues, the superior court recognized that the affidavit was invalid, but held that the invalid affidavit "does not invalidate the ordinance" and noted that the City "provided copies of the newspaper showing that the ordinance did in fact run as necessary." The newspaper copies, however, do not appear to be in the record on appeal, and although the City notes in its brief that the superior court said that the City was able to provide copies, it cites only the superior court's order, not the record, for this point.

current mobile home on one lot in the 794 Oak Avenue property, explaining that a newer, more energy efficient unit would result in a better return on their investment, and (2) to put additional mobile homes on lots on the 790, 791, and 793 Oak Avenue properties.[5] After this request was denied, Appellants appealed to the City planning and zoning commission, arguing that Ordinance 27-08 was unlawfully enacted and that Section 74 is unconstitutionally vague and effected an unconstitutional taking of their properties. The commission considered and denied the appeal at a special meeting on April 24, 2012. Appellants then appealed to the board of zoning appeals, which denied their appeal after a meeting on May 24, 2012.

On June 19, 2012, Appellants sought judicial review of this denial in the superior court.[6] They claimed that the 1994 and 2008 BEOD ordinances were unconstitutionally enacted because insufficient notice was given, in violation of the Zoning Procedures Law (ZPL), see OCGA §§ 36-66-1 to 36-66-6, and their

---

[5] Appellants have represented that 12 out of 36 lots in their planned mobile home park on those properties are occupied by mobile homes. It appears that these 12 mobile homes have been permitted as nonconforming uses.

[6] Appellants named as defendants the City as well as the City's mayor, building official, and director of the department of development in their individual and official capacities. None of these individuals has filed anything separately from the City, so the defendant/appellees are referred to collectively as "the City."

6

procedural due process rights, and that the City's denial of their request to build mobile homes was improper because the BEOD ordinance is unconstitutionally vague and overbroad as applied to them. Appellants also claimed that the zoning scheme constitutes a taking of their properties and impermissibly interferes with their contracts, and they requested attorney fees.

On March 5, 2013, after discovery, Appellants moved for summary judgment. On June 28, 2013, the superior court denied that motion, explaining that the BEOD ordinance prohibits mobile homes on Appellants' properties; that the 2008 BEOD ordinance "appears" to be validly enacted; that even if it was not, mobile homes are still prohibited under the 1994 BEOD ordinance; and that Appellants cannot expand their nonconforming use by removing a mobile home and replacing it with a new one or by placing new mobile homes on previously vacant lots. On October 3, 2013, the City moved for summary judgment. After obtaining new counsel, Appellants filed a response and an amended complaint. Appellants added a claim that the BEOD ordinance deprives them of their vested right to use their properties for mobile homes and amended the taking claim to allege that the BEOD ordinance has taken their properties without just compensation and to request money damages under 42 USC § 1983. After a

hearing, the superior court granted the City's motion for summary judgment on October 1, 2014. In its order, the court explained that most of the issues had been decided in the June 2013 order and found that notice of the 2008 BEOD amendment had been published as required.

Appellants sought to appeal that order, filing a notice of appeal to this Court. We concluded that the superior court had not distinctly ruled on the constitutional issues and so transferred the case to the Court of Appeals, which in August 2015 dismissed the direct appeal for failure to file an application for discretionary appeal. We then denied Appellants' petition for certiorari. When the case returned to the superior court, Appellants moved for a ruling on the remaining issues in the case, namely their constitutional challenges. On July 7, 2016, the court granted the City summary judgment, expressly ruling that the City's zoning ordinance is not unconstitutional and that Appellants' claims of deprivation of rights under 42 USC § 1983 and regulatory taking are without merit. This appeal followed.

2. Appellants argue that the City did not comply with the notice requirement imposed by the ZPL before enacting Ordinances 27-08 and 12-94. See OCGA § 36-66-4 (requiring that the local government provide for a hearing

8

on a proposed zoning action and publish notice of the hearing in the local newspaper "[a]t least 15 but not more than 45 days prior to the date of the hearing"). As discussed in footnote 4 above, no competent evidence in the record currently on appeal shows that the City published notice as required by the ZPL before passing Ordinance 27-08. And the record contains no evidence at all about a hearing or notice of a hearing on Ordinance 12-94. Whether the City met the ZPL notice requirement is not an issue to be decided in this appeal, however, because as explained above, Appellants already had their opportunity to appeal the superior court's October 2014 order ruling on their statutory claims, including their contention that the City violated the ZPL. That appeal was dismissed in August 2015, and Appellants are not entitled to a second appeal from the October 2014 order. See Massey v. Massey, 294 Ga. 163, 164-165 (751 SE2d 330) (2013). Appellants may raise in this appeal only the constitutional claims on which the superior court first distinctly ruled in its July 2016 order.

Appellants label their notice argument as a constitutional one; this enumeration of error and the heading of the pertinent section of their brief say that the zoning ordinances were "unconstitutionally enacted." The substance of

the argument, however, focuses entirely on the alleged failure to meet the notice requirement of the ZPL, and Appellants make no argument and cite no authority that by failing to meet that statutory requirement, the City violated constitutional due process. Cf. Sikes v. Pierce, 212 Ga. 567, 568 (94 SE2d 427) (1956) (explaining, before the enactment of the ZPL, that the Constitution requires "notice and hearing" regarding a zoning ordinance but not imposing any specific timing or manner requirements on the notice). Indeed, the concluding sentence of this argument in Appellants' brief says (with emphasis supplied): "Since the City failed to comply with Georgia law in enacting the ordinances, they are invalid and contrary to general Georgia *statutory* law." Accordingly, Appellants' constitutional challenge to the City's ordinances based on their enactment process has been abandoned. See Supreme Court Rule 22 ("Any enumerated error not supported by argument or citation of authority in the brief shall be deemed abandoned. . . ."); McFarlane v. McFarlane, 298 Ga. 361, 363 (782 SE2d 29) (2016).

3. Appellants argue that the term "mobile home court or park" in the 2008 BEOD ordinance is unconstitutionally vague, and that it is unclear if the ordinance precludes them from placing additional mobile homes on their

10

properties. As a matter of due process, a law is void if it is "so vague that persons of 'common intelligence must necessarily guess at its meaning and differ as to its application.'" Gouge v. City of Snellville, 249 Ga. 91, 93 (287 SE2d 539) (1982) (citation omitted). Appellants are seeking to add several mobile homes on their four adjoining properties, which already have at least 15 other mobile homes. Persons of common intelligence would understand that the term "mobile home park or court" encompasses this kind of aggregation of commonly owned mobile homes. Indeed, in their amended complaint and in their brief to this Court, Appellants explain that they want to develop a "manufactured home park" or a "mobile home park" on their properties. Accordingly, the ordinance is not vague as applied to Appellants' situation.

Appellants argue that even if it is clear that a large group of related mobile homes would qualify as a "mobile home park or court," the ordinance is unconstitutionally vague because it is not clear whether this language prohibits the placement of a single mobile home in the BEOD area. We need not decide whether the ordinance might be confusing for the owner of a single mobile home, however, because Appellants are not in that situation. "'(E)ven if the outermost boundaries of the applicable section of the ordinance may be

11

imprecise in certain situations . . . , one to whose conduct (an ordinance) clearly applies may not challenge it on the basis that it may be unconstitutionally vague when applied to others.'" Burton v. Glynn County, 297 Ga. 544, 548 (776 SE2d 179) (2015) (citation omitted). Thus, Appellants lack standing to raise this argument. See Catoosa County v. R.N. Talley Properties, LLC, 282 Ga. 373, 375 (651 SE2d 7) (2007).

4.     Appellants contend that the BEOD ordinance unconstitutionally hampers the use of their properties by violating their vested rights to use the properties for mobile homes and by depriving the properties of value so as to effect a taking for which they should receive compensation.[7]

(a)     Appellants' mobile homes on the 794 Oak Avenue property have been allowed by the City as legal nonconforming uses because they were in place before the first BEOD ordinance was enacted in 1994. Appellants are not satisfied with this and contend that they should be allowed to expand their nonconforming use by replacing one of these mobile homes with an upgraded unit. However, as Appellants acknowledge in their complaint, §§ 61.5 and 61.6

_____

[7] Appellants make essentially the same argument in different terms in their contention that the BEOD ordinance is "overbroad" because it has harmed their vested property rights.

12

of the City's zoning ordinance prohibit expansion of nonconforming uses, including through the erection of new nonconforming structures. This restriction is not unreasonable, and "'(a) governing authority can require a nonconforming use to be terminated in a reasonable time.'" BBC Land & Dev., Inc. v. Butts County, 281 Ga. 472, 473 (640 SE2d 33) (2007) (citation omitted). See also Ralston Purina Co. v. Acrey, 220 Ga. 788, 791 (142 SE2d 66) (1965) ("[P]rior nonconforming uses are not absolutely protected from subsequent zoning regulations."); Flippen Alliance for Community Empowerment, Inc. v. Brannan, 267 Ga. App. 134, 137 (601 SE2d 106) (2004) ("[C]ourts have consistently held that ordinances prohibiting the expansion of a nonconforming use to new lands are enforceable."). Thus, the City's denial of Appellants' request to replace an existing mobile home with a newer one was not unconstitutional.

As for Appellants' request to put additional mobile homes on the 790, 791, and 793 Oak Avenue properties, Appellants acquired that land *after* the BEOD ordinance took effect. Ordinance 12-94 was enacted in February 1994, and Appellants purchased the properties more than three years later, in June 1997. The BEOD ordinance in place at that time clearly prohibited

"manufactured housing" and "mobile homes" in the area. Thus, Appellants did not acquire a vested right to put mobile homes on these properties. Although Appellants allege generally that they have incurred expenses related to owning and developing their manufactured home park, they have not shown that they made "expenditures, in addition to paying the purchase price, in reliance on the existing zoning and assurances by zoning officials." WMM Properties, Inc. v. Cobb County, 255 Ga. 436, 439 (339 SE2d 252) (1986). Compare Spalding County v. East Enterprises, Inc., 232 Ga. 887, 888-889 (209 SE2d 215) (1974) (explaining that the property owner acquired "a vested interest in the mobile home park classification" that existed when the owner bought the property and on which the owner relied to expend time and money developing a mobile home park). Appellants suggest that they have a vested right in the zoning that existed before they bought the properties, but unlike nonconforming uses, "vested rights to develop property in accordance with prior zoning are personal to the owner of them and are not transferable with the land." BBC Land, 281 Ga. at 474.

The fact that the City granted Appellants' petition to rezone the properties to R-MH in July 1997 does not change this result. This Court has held that a property owner may acquire a vested right based on a government-issued

building permit that violated the subsequently revised zoning ordinance when the owner "obtained approval for detailed development plans of all relevant [local government] departments . . . and expended large sums of money to go ahead with development from that point." WMM Properties, 255 Ga. at 439. In this case, however, the City did not formally approve a plan by Appellants to develop a mobile home park. It granted only a rezoning. That rezoning changed only the underlying zoning classification; it did not change the BEOD ordinance, which has always prohibited mobile home parks and which clearly explains in § 74.4.1 that: "Proposed developments located within this zoning district shall comply with these requirements *and* the requirements of the underlying zoning district . . . . In the case of conflicting standards and requirements, the *more stringent* standards and requirements shall apply." (Emphasis supplied.) In light of this clear language, Appellants could not have reasonably relied on the rezoning to erect mobile homes on the properties.

(b) Finally, Appellants argue that the BEOD ordinance has effectively taken their properties without just compensation in violation of the Federal Constitution, see U. S. Const. amend. V, and that they are therefore entitled to damages. Appellants assert that because their properties are now zoned R-MH

15

— as they requested — the *only* use permitted by this zoning designation is mobile homes. As discussed in footnotes 2 and 3 above, however, Appellants did not put in the record a certified copy of the relevant zoning ordinance provisions, and they therefore have presented no competent evidence to support this assertion. See Whitfield v. City of Atlanta, 296 Ga. 641, 641 (769 SE2d 76) (2015).[8] Appellants have offered evidence only that it would be more expensive to build something other than mobile homes on their vacant lots and that the lots are surrounded by mobile homes (although it appears that these surrounding mobile homes are nonconforming uses). This is insufficient to prove a regulatory taking under the Fifth Amendment. See Penn Central Transp. Co. v. New York City, 438 U. S. 104, 131-137 (98 SCt 2646, 57 LE2d 631) (1978).

Judgment affirmed. All the Justices concur.

---

[8] Although it is not competent evidence for a court to consider, we note that the City's zoning ordinance accessible online undermines Appellants' claim, as it indicates that properties zoned R-MH have numerous permitted uses beyond mobile homes: single-family dwellings, accessory buildings to the main structure, home swimming pools, public utility structures and buildings, signs, modular homes, and service and auxiliary buildings to serve the residents of a manufactured home park. Additionally, the planning and zoning commission may grant a special exception to use R-MH land for churches and related accessory buildings; golf, swimming, tennis, or country clubs; community clubs or associations; athletic fields, parks, and recreation areas; home businesses; public and private schools and libraries; and group and personal care homes.

16

Decided October 30, 2017.

Zoning. Houston Superior Court. Before Judge Nunn.

<u>Mack & Harris, Robert L. Mack, Jr., Joe M. Harris, Jr.</u>, for appellants.

<u>Chambless, Higdon, Richardson, Katz & Griggs, Jason D. Lewis</u>, for appellees.